NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0242n.06

No. 20-3880

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| SAAD SAKKAL, M.D., | ) | |
| Defendant-Appellant. | ) | |

```
FILED
May 31, 2023
DEBORAH S. HUNT, Clerk
```

ON REMAND FROM THE
SUPREME COURT OF THE
UNITED STATES

OPINION

Before: ROGERS, COLE, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge.

With the express concurrence of the Government, the Supreme Court has vacated and remanded our affirmance of defendant Sakkal's convictions for illegal distribution of controlled substances in violation of 21 U.S.C. § 841(a). In the previous appeal we rejected Sakkal's arguments that he was improperly denied bail, that the evidence against him was not sufficient, and that his trial counsel was ineffective in two ways that had been addressed by the district court following a hearing. We declined to address other ineffective-assistance issues on direct appeal and affirmed, leaving the unaddressed ineffective-assistance issues to possible consideration on collateral review under 28 U.S.C. § 2255. Subsequently, the Supreme Court held in *Ruan v. United States*, 142 S. Ct. 2370 (2022), that "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized'" under § 841(a), "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."

No. 20-3880, *United States v. Sakkal*

*Id*. at 2376.  Sakkal timely petitioned for certiorari, contending that in light of *Ruan* the district court erred in its jury instructions on the mens rea requirement under § 841(a).  The United States advised the Court to grant certiorari, vacate the decision below, and remand the case for further consideration (GVR) in light of *Ruan*.  The Supreme Court did just that.  The fact that the United States endorsed the GVR did not waive its argument that Sakkal failed to preserve the *Ruan* issue in the district court, so we apply plain error review.  Because the instructions below survive deferential plain-error review, we adhere to our prior judgment of affirmance.  This, however, does not preclude Sakkal from raising the *Ruan* issue as part of his ineffective-assistance-of-counsel claims in a subsequent collateral attack under 28 U.S.C. § 2255.

Saad Sakkal practiced medicine at Lindenwald Medical Association from February 2015 to December 2016.  Sakkal was licensed to practice medicine in Ohio and also had a Drug Enforcement Administration (DEA) registration number to dispense Schedule II through Schedule V controlled substances.  The DEA began investigating Sakkal's prescription practices after a referral from the Ohio Medical Board, which had received several phone calls from pharmacists about Sakkal's issuance of problematic prescriptions.

In June 2018, a grand jury returned a thirty-nine-count indictment against Sakkal:  thirty counts of illegal distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1); two counts of distribution of a controlled substance that resulted in death in violation of 21 U.S.C. § 841(b)(1)(C); and seven counts of using the registration number of another to dispense a controlled substance in violation of 21 U.S.C. § 843(a)(2).

At trial, the Government introduced testimony that Sakkal utilized several dangerous prescription methods.  The Government's expert, Dr. Timothy King, testified that Sakkal was prescribing multiple substances that served the same purpose and that this "therapeutic

No. 20-3880, *United States v. Sakkal*

duplication" risked "significant adverse effects, including respiratory sedation and death." Sakkal also prescribed several dangerous combinations of controlled substances, including: (1) amphetamines and opioids; (2) methadone with a benzodiazepine and an amphetamine; and (3) opioids with a benzodiazepine and a muscle relaxant, Soma. Finally, Sakkal sometimes prescribed high amounts of controlled substances.

The Government also presented testimony that Sakkal ignored warning signs about the danger of his prescription practices. Employees at Lindenwald administered drug screens to determine if patients were taking their controlled substances as prescribed and to evaluate whether the patient was also taking illegal controlled substances. These drug screens operate as an objective method to ensure that controlled-substance prescriptions do not contribute to a risk of overdose or maintenance of an addiction. Sakkal's records indicated that his patients' drug screens sometimes revealed that patients were taking unprescribed controlled substances or were not taking prescribed controlled substances. Sakkal's records never showed that he discharged or disciplined a patient because of the concerning drug screens.

Sakkal also failed to use the Ohio Automated Rx Reporting System (OARRS) to monitor his patients' prescriptions for controlled substances. This system is designed to log all of a patient's controlled-substance prescriptions that are filled or dispensed in Ohio. This allows a physician to ensure that patients have not already received a prescription for their ailments and to confirm that patients have not been doctor shopping to obtain controlled substances. Even when other Lindenwald employees provided Sakkal with OARRS reports for his patients, he did not review the reports.

Several pharmacies became aware of Sakkal's prescription practices and began calling Lindenwald to discuss concerns about them. Sakkal met with at least three pharmacies to discuss

No. 20-3880, *United States v. Sakkal*

these concerns, but he did not change his prescribing practices.  Some pharmacies decided to stop filling Sakkal's prescriptions for controlled substances.  In addition to charging Sakkal with illegal distribution of controlled substances, the indictment charged Sakkal with two counts of illegally distributing controlled substances that resulted in a patient's death.

At trial Sakkal requested inclusion of jury instructions regarding the "except as authorized" provision of 21 U.S.C. § 841(a).  As relevant here, Sakkal proposed (instruction no. 3) instructing the jury that the Government must prove he "acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice," and that, to find him guilty, "the jury must make a finding of intent, not merely with respect to distribution, but also with respect to [Sakkal's] intent to act as a pusher rather than a medical professional."  He further requested the court include an instruction stating that a physician does not violate § 841 if he prescribed the substances in "good faith" in "accordance with what the physician should reasonably believe to be a proper medical practice."  Sakkal also requested the court instruct the jury as to the meaning of "outside the bounds of professional medical practice."  According to Sakkal's proposed instruction no. 2, prescribing outside the bounds of professional medical practice means "prescrib[ing] drugs as being used not for treatment of a patient, but for the purpose of assisting another in the maintenance of a drug habit or of dispensing controlled substances for other than a legitimate medical purpose; for example, the personal profit of the physician."  The district court declined to use Sakkal's requested instruction on subjective intent (instruction no. 3) but did use his requested instruction on deliberate ignorance and good faith (instruction no. 7).  Sakkal made no objection, at either the pre-trial conference or the follow-up conference held after the defense had rested, to the district court's decisions to use instruction no. 7 and not use instruction no. 3.  His only objection to the mens rea section of the jury instructions was to delete

No. 20-3880, *United States v. Sakkal*

"or was beyond the bounds of medical practice" after "in the usual course of his professional practice," which the district court did. Thus, with respect to mens rea, the district court instructed as follows:

> In order to find the defendant guilty of a violation of 21 U.S.C. 841(a)(1), the government must prove beyond a reasonable doubt each of the following elements:
>
> > (1) The defendant distributed or dispensed a controlled substance as alleged in these counts of the Indictment[;]
> >
> > (2) The defendant acted knowingly and intentionally in distributing or dispensing that controlled substance; and
> >
> > (3) The defendant's act was not for a legitimate medical purpose in the usual course of his professional practice.

The instructions also included the following explanation:

> The term "knowingly" means that the act was done voluntarily and intentionally and not because of a mistake or accident. Although knowledge of the defendant cannot be established merely by demonstrating that he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact.
>
> No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the controlled substances alleged in these counts were distributed or dispensed outside the course of professional practice and not for a legitimate medical purpose, then you may find that the defendant knew that this was the case.
>
> But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed outside the course of professional practice and not for a legitimate medical purpose, and that the defendant deliberately closed his eyes to what was obvious.
>
> Carelessness or negligence or foolishness on his part are not the same as knowledge and are not enough to find him guilty on any of these counts.

The jury convicted Sakkal, among other things, of thirty counts of illegally distributing a controlled substance. On Sakkal's motion for a new trial, the district court held an evidential hearing, with new counsel for Sakkal, on whether Sakkal received ineffective assistance of trial counsel in two respects not relevant to this appeal. The district court proceeded to rule against Sakkal on these two ineffective-assistance claims.

No. 20-3880, *United States v. Sakkal*

On Sakkal's direct appeal, we rejected his first argument—that he was improperly denied reasonable bail—and his second argument—that the evidence presented during trial was insufficient to establish that he caused the death of one of his patients. *United States v. Sakkal*, No. 22-3880, 2022 WL 557520, at *3–4 (6th Cir. Feb. 24, 2022). We reviewed and rejected the two ineffective-assistance-of-counsel claims that the district court had ruled upon following the hearing. We declined to address the remaining ineffective-assistance-of-counsel claims based on our consistent practice not to entertain ineffective-assistance-of-counsel claims on direct appeal where there has not been an opportunity to develop an adequate record to evaluate the merits of the allegations. *See United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010). "Such claims 'are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255, after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision.'" *Id.* (quoting *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir. 1999)). Among the listed claims we declined to review was Sakkal's claim that his "counsel did not object to the jury instructions about the necessary intent required to convict" him. *Sakkal*, 2022 WL 557520, at *4 n.2.

Before Sakkal's time to petition for certiorari ran out, the Supreme Court decided *Ruan v. United States*, 142 S. Ct. 2370 (2022). The *Ruan* Court held that the "knowingly or intentionally" mens rea requirement applies not only to the "manufacture, distribute, or dispense" requirement of § 841(a), but also to the requirement that defendant's acts have not been "authorized." *Id.* at 2375. In the Supreme Court's words, "the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Id.* Sakkal sought certiorari, arguing that the Supreme Court should GVR our judgment on the ground that his jury had been given a scienter instruction that did not comply with the *Ruan*

No. 20-3880, *United States v. Sakkal*

holding.  In a three-sentence memorandum in response, the Government agreed that GVR was "the appropriate course."  The Supreme Court entered a GVR order in this and several other cases, some from this circuit and some from the Tenth and Eleventh Circuits.  On remand, at our invitation, the parties have briefed how we should proceed.

The remaining substantive issue now before us is whether the jury instructions with respect to mens rea were erroneous under the *Ruan* holding.  There are also procedural issues regarding whether Sakkal forfeited that issue in the district court, whether Sakkal forfeited the issue in our court, and whether the Government forfeited reliance on these forfeitures by acquiescing in the GVR order.  The bottom line is that, in light of this Court's recent post-*Ruan* holding in *United States v. Anderson*, No. 21-3073, __ F.4th __, 2023 WL 2966356 (6th Cir. April 17, 2023), the instructions in this case were not plainly erroneous, and affirmance is still required.

We apply plain error review to the question of whether the district court's scienter instruction complied with the holding of *Ruan*, because Sakkal did not preserve that jury instruction issue below, as required by Federal Rule of Criminal Procedure 30(d).  Although Sakkal's counsel did propose to the district court an instruction that he contends anticipated the requirements of *Ruan*, that is not sufficient because he never objected to the district court's decision declining to give the instruction, despite clear opportunities to do so.  In *United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012), we squarely held that merely proposing an instruction is not sufficient to preserve such an issue.  Of course, when there is such a forfeiture, a defendant may nonetheless argue on direct appeal that there is plain error under Rules of Criminal Procedure 30(d) and 52(d).  *See Greer v. United States*, 141 S. Ct. 2090, 2096 (2021).  This is in line with our recent unpublished opinion in *United States v. Fabode*, No. 21-1491, 2022 WL 16825408 (6th Cir. Nov. 8, 2022), where we accordingly reviewed a claim of instructional error based on *Ruan*

No. 20-3880, *United States v. Sakkal*

for plain error. In that case, the defendant, who was convicted before *Ruan* came down, had not argued for a *Ruan*-compliant instruction either in the form of proposed jury instructions or in objecting to the instructions given in the district court. *Id*. at \*6–7.

Indeed, Sakkal's supplemental reply brief (commendably) concedes that—apart from an argument based on the Government's acquiescence in the GVR—"the government has the better of the preservation issue in the district court," such that plain error review is proper. The Government's acquiescence in the GVR, however, makes no difference. In *Lawrence v. Chater*, 516 U.S. 163, 171 (1996), the Court referred to its "well established practice of GVR'ing based on confessions of error that do not purport to concede the whole case." *Chater* cited *Moore v. United States*, 429 U.S. 20 (1976), in which the Court GVR'd "based on the Solicitor General's confession of error, notwithstanding the Solicitor General's unresolved claim that the error was harmless[.]" *Id*. Granting, vacating, and remanding is discretionary on the part of the Supreme Court, and the Solicitor General should be able to advise the Court to GVR in such a way as to conserve the Supreme Court's scarce resources. When there are multiple certiorari petitions that have raised the same issue, and the Supreme Court has ruled on that issue, it makes sense that the remaining cases be sent back to the lower courts to apply the new law without deciding in each of those cases whether there is an alternative basis for deciding whether to grant certiorari. No one expects the Court to take all these cases just to make sure that there is not some independently dispositive issue lurking in any of them. It simply does not make sense to force the Government to find and argue such issues in the Supreme Court, on pain of waiving legitimate bases for ruling in its favor, when the obviously advisable course in many cases is just to send the case back, as the Court did in this case. In other words, the Court should be able to rule on one issue, and have that ruling considered where relevant in the lower courts, without having to address alternative

No. 20-3880, *United States v. Sakkal*

arguments in cases not yet before it. Moreover, the Government should be able to recommend such a course where appropriate, without waiving such alternative arguments.

The cases cited by Sakkal do not support his Government waiver argument. The fact that the Government *may* use a petitioner's failure to raise an issue as one reason to oppose certiorari does not require the conclusion that it *must*, on pain of forfeiting the issue in the court below. Moreover, that the Government may use the petitioner's failure to raise an issue as one reason for opposing certiorari does not say anything about the meaning of a summary memorandum acquiescing in certiorari. Thus the Government briefs in *Salgado v. United States*, 140 S. Ct. 2640 (2020) (No. 19-6590), 2020 WL 1372757, and *Stevens v. Dep't of Treasury*, 500 U.S. 1 (1991), provide Sakkal no support on the GVR-acquiescence waiver issue. Of course, there are cases referring to the possibility that the Government may waive a waiver issue, but the cases cited by Sakkal do not deal with a GVR acquiescence, and most do not even deal with waiver at the certiorari level at all. *See Greer*, 938 F.3d at 770; *United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (discussing waiver where we remanded the case to the district court). In *Lee v. Kemna*, 534 U.S. 362, 376 n.8 (2002), there is indeed a reference to a Government procedural default in its opposition to the petition for a writ of certiorari, but the case also involved a Government failure to raise the waiver issue in the court below, *i.e.* not solely at the certiorari level, and the case did not involve a Government acquiescence in a GVR.

The Government's agreement to a GVR thus did not forfeit the argument that Sakkal procedurally defaulted his objections to the district court's intent instructions. Plain error review is therefore appropriate, unless Sakkal's failure to challenge the intent instructions in his initial briefing to us in turn forfeited even plain error review.

No. 20-3880, *United States v. Sakkal*

However, we need not resolve the latter argument here. For practical purposes, GVR'ing our decision—based on a Supreme Court case that came down after appellate judgment but before a certiorari petition was due—is little different from having the court of appeals examine the applicability of *Ruan* before judgment in our court but after briefing. In the latter case, we do not doubt that we could order supplemental briefing on the relevance of the new precedent, based for instance on Rule of Appellate Procedure 28(j), and proceed to address the relevance of the new precedent with no harm to the structural interest of respect for the district court, and no harm to a party's ability to fully address the issue. The possibility that the district court will be reversed without having had the chance to bring its actions into compliance with the law is just as small as under standard plain error review of its decisions. Also, by permitting supplemental briefing, the parties can address the applicability of the new precedent, just as they could where the new precedent came down during the late stages of appellate review. The latter situation occurred in *Fabode*, *supra*, and we proceeded to examine whether *Ruan* applied notwithstanding the failure of the defendant to argue regarding an intent instruction in his initial appellate briefing. *Fabode*, 2022 WL 16825408, at *7.

However, we need not resolve this argument because, as in *Fabode*, it makes no difference as Sakkal's intent instruction claim fails on plain error review. That conclusion is compelled by our post-*Ruan* decision in *United States v. Anderson*, No. 21-3073, __ F.4th __, 2023 WL 2966356 (6th Cir. April 17, 2023), upholding a conviction under § 841(a) where the intent instruction was almost identical to the one in Sakkal's case.

Sakkal argues that the following instruction in the district court "told the jury that the 'knowingly or intentionally' element applied *only* to the act of *distributing* or *dispensing* (precisely the sort of instruction that the Supreme Court rejected in *Ruan*)":

No. 20-3880, *United States v. Sakkal*

> In order to find the defendant guilty of a violation of 21 U.S.C. 841(a)(1), the government must prove beyond a reasonable doubt each of the following elements:
>
> (1)  The defendant distributed or dispensed a controlled substance as alleged in these counts of the Indictment;
>
> (2)  The defendant acted knowingly and intentionally in distributing or dispensing that controlled substance; and
>
> (3)  The defendant's act was not for a legitimate medical purpose in the usual course of his professional practice.

Sakkal's supplemental reply brief characterizes this instruction as telling "the jury, point blank, that the scienter element of Section 841(a)(1) applies *only* to the act of 'dispensing' controlled substances, and not to the separate 'except as authorized' element." This language clearly says that "knowingly and intentionally" applies to "dispensing," and does not say that in so many words with respect to the negative "not for a legitimate medical purpose in the usual course of his professional practice."

Our recent holding in *Anderson* forecloses this negative implication argument, however. *Anderson* was another § 841(a) case in which the conviction preceded the *Ruan* decision. The instruction in that case was formulated a little differently but maintained the same dichotomy: the knowing-and-intentional scienter is specifically tied to the action of dispensing, but not specifically tied to the "not for a legitimate medical purpose in the usual course of his professional practice" requirement:

> First, the defendant knowingly or intentionally dispensed or distributed a Schedule II controlled substance, including fentanyl, Adderall, oxycodone and hydrocodone; and,
>
> Second, that the defendant, Dr. Anderson, prescribed the drug without a legitimate medical purpose and outside the course of professional practice.

*Anderson*, 2023 WL 2966356, at *7. In evaluating whether this language reflected a violation of *Ruan*, our court reasoned as follows,

No. 20-3880, *United States v. Sakkal*

The [district] court then gave "more detailed instructions on some of these terms." In describing terms related to the second element, it explained that:

> Although knowledge of the defendant cannot be established merely by demonstrating he was careless, knowledge may be inferred if the defendant deliberately blinded himself to the existence of a fact. No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the controlled substance was distributed or dispensed without a legitimate medical purpose in the usual course of professional practice, then you may find that the defendant knew this was the case.

The instruction given to the jury specifically covers the holding of *Ruan*, by referring continuously to the "knowledge of the defendant," his "deliberate ignorance," and if he "knew" that the prescriptions were dispensed illegitimately. Such terms go beyond an objective view of the "usual course of professional practice" and instead direct the jury's attention to Anderson's subjective mindset in issuing the prescriptions.

The [district] court goes on to further emphasize that knowledge, and no lesser level of culpability, is required to find Anderson guilty on this element:

> But you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the controlled substances were distributed or dispensed other than for a legitimate medical purpose while acting in the usual course of professional practice, and that the defendant deliberately closed his eyes to what was obvious. *Carelessness, or negligence, or foolishness on his part are not the same as knowledge and are not enough to find him guilty on this count.*

The instructions given by the court, though not expressed in the way Anderson requested, substantially cover the concept of knowledge through the description of deliberate ignorance and the juxtaposition of "knowledge" with "[c]arelessness, negligence, or foolishness." *Cf. United States v. Damra*, 621 F.3d 474, 502 (6th Cir. 2010) (finding that, in the tax evasion context, a good faith instruction was substantially covered by the court's instruction that the defendant had to have acted voluntarily and deliberately to violate known law to be found guilty). Because the jury instructions given in Anderson's case appear to comport to *Ruan* and to substantially cover the requested instruction, we reject Anderson's argument that the district court abused its discretion in failing to give a good faith instruction.

No. 20-3880, *United States v. Sakkal*

*Id.* at *7–8 (citations omitted).  This reasoning is directly applicable to Sakkal's case because the same deliberate ignorance instruction relied upon in *Anderson* to eliminate any negative inference was given word-for-word in Sakkal's trial.  *See* supra, p. 5–6.

Given *Anderson*'s holding that this language kept the instructions in that case from amounting to a violation of *Ruan*, the conclusion is compelled that the same language in Sakkal's case kept the instructions from amounting to plain error.  A reversal for plain error requires four elements:

> *First*, there must be an error.  *Second*, the error must be plain.  *Third*, the error must affect "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings."

*Greer*, 141 S. Ct. at 2096–97 (citations omitted).  It is sufficient for the purposes of this case to conclude that the second requirement is not met, that any error be plain.  For these purposes, "[p]lain is synonymous with 'clear' or, equivalently, 'obvious.'"  *United States v. Olano*, 507 U.S. 725, 734 (1993).  The *Anderson* court explained that "more detailed instructions" in that case ensured that the instructions comported with *Ruan*'s holding, and the same is true in Sakkal's case by virtue of the identical "more detailed instructions."  *See Anderson*, 2023 WL 2966356, at *7–8.  It follows that the instruction in Sakkal's case cannot be "plain error" in light of our published precedent in *Anderson*.

This conclusion is sufficient to affirm Sakkal's conviction on direct appeal.  We do not address the other elements of the plain error test, or any arguments regarding ineffectiveness of Sakkal's counsel.

The judgment of the district court is affirmed.